Miller, J.
Whether the power conferred by the act of the fifth general assembly to enlarge the boundaries of the town of Fort Madison, by implication, conferred the power to contract such boundaries, and whether the plaintiffs’ property in West Madison, at the commencement of this action, was within the legal corporate limits of Fort Madison, we need not determine, inasmuch as we dispose of the case upon the other questions involved.
*540 Under the former adjudications of this court, and the admitted facts of this case, it would seem clear that the appellees’ lands are not hable to the taxes proposed to be imposed thereon by the city. In the case of Morford v. Unger, 8 Iowa, 82, it was held that “ where land adjoining a city or town is vacant or a cultivated farm, occupied by the owner for agricultural purposes, and not required for streets or houses or other purposes of a town, and solely for the purpose of increasing its revenue, it is brought within the taxing power by an enlargement of the city limits, such an act, though on its face providing only for the extension of the city limits, is, in reality, nothing more than authority to the city to tax the land to a certain distance outside of its limits; and is, in effect, the taking of private property without just compensation, within the spirit and meaning of the constitution.”
In Langworthy v. The City of Dubuque, 13 Iowa, 86, the case of Morford v. Unger was re-affirmed, and it was further held, that “ mere submission on the part of the citizen, except in extreme cases, to an illegal levy of taxes, will not be construed into a recognition of the right, to the extent of estopping him from subsequently denying it.” In the case in 16 Iowa, 271, between the same parties, it was held that “ while the enlargement of the boundaries of a municipal corporation, whereby the property of individuals is brought within the corporate limits, without their consent, and thereby subjected to municipal taxation, may not be an infringement of the constitution by taking private property for public use, it may so operate when such extension is unreasonable, and embraces lands and territory not needed for buildings and population, but which is taxed for the benefit of the territory which is thus needed and occupied,” and that “ the court will interfere to restrain municipal taxation, where practicable, in cases in which it is shown that the proprietor of the pi'op&rty taxed cannot be benefited in a municipal point of view.” In Fulton v. *541 The City of Davenport, 17 Iowa, 404, the principle annonnced in the case last cited was re-affirmed. In Buel v. Ball, 20 Iowa, 282,. it was held that “ the fact that lands are embraced within the corporate limits of a municipal corporation, as defined by the original charter, does not confer upon the corporation the power to levy taxes thereon for municipal purposes, regardless of their situation in other respects, or of the use made of them; and the fact that the owner of agricultural lands withiu the limits of a municipal corporations asked for and aided in procuring the original charter or act of incorporation, does not affect the right of such corporation to levy taxes on such lands.”
It was further held in that case that “ the payment, for several years, of municipal taxes, levied upon agricultural lands, does not estop the owner of his right to challenge the legality of the levy?’ In O' Hare v. The City of Dubuque, 22 Iowa, 144, it was held that “a city out-lot situated within the extended limits of the city, which is not accessible by any street leading to the business part of the city, and has no additions or city improvements near it; which is surrounded, for some distance in, every direction, by lands used exclusively for agricultural and mineral purposes, and is not benefited by the current expenditures of the city,” is not liable to municipal taxation. And in Deeds v. Sanborn, 26 Iowa, 419, it was held that “ lands lying within the' limits of an addition to a city, though within the corporate limits, which are used for agricultural purposes, which are remote from the city proper and to or near which no streets or alleys have ever been worked, are not liable to taxation for city purposes.” We have thus, in detail, referred to the various decisions of this court upon the questions involved in this case, and find that all of the questions herein, are covered by those adjudications.
In the ease before us the plaintiff’s lands are used exclur sivety for agriaulimral^mr^poses ; they have not been benefited by the current expenditures of the city; no money *542 has ever been expended by the city for improvements on any of said lands; no street or alley has ever been opened or worked except Fifth street, which unites with and is the “ Fort Madison and Franklin road” on the south of these lands; at the time of surveying and platting said West Madison there were no improvements thereon of any kind; the lands are not needed for buildings, streets or any other city purposes; some of the out-lots of the city proper are uninclosed, and others are used exclusively for agricultural purposes, showing that not all of the territory within the city proper is needed for any city purpose, and that the lands of plaintiffs are sought to be brought within the jurisdiction of the city solely for the purpose of increasing its revenue, thereby taxing these lands for the •benefit of others owning property in the city. The lands of the plaintiffs have not been enhanced in value since they have been within the corporate limits.
That the plaintiffs’ grantor dedicated her land, as shown by the survey and plat, or that the plaintiffs paid taxes to the city for several years, does not, as we have seen, estop them from challenging the legality of the levy resisted in this suit. Upon the principles settled in the cases refered to, we are clear that the appellees’ lands are not liable to the burden of municipal taxation, and the decree of the district court is therefore
Affirmed.
Beck. J., took no part in the decision.