THE STATE OF NEVADA UPON THE RELATION OF EVELYN R. AND JOHN D. BIBB, ET AL., RELATORS, *v.* CITY OF RENO, ET AL., RESPONDENTS.

No. 3476

March 17, 1947.                    179 P.2d 366.

*Springmeyer & Thompson*, of Reno, for Relators..

*Emerson J. Wilson*, City Attorney, and *Louis V. Skinner*, Assistant City Attorney, both of Reno, for Respondent.

## OPINION

By the Court, EATHER, C. J.:

Relators, by quo warranto, attack a Reno city ordinance annexing about 50 acres of agricultural land owned by relators. Respondents, mayor and councilmen, filed a general demurrer. In substance, the complaint, map, and other exhibits show:

The annexation is a misuse of the city's franchise, is arbitrary, unjust, unreasonable, unnecessary, and a taking of property without due process, for the following reasons:

Annexation would result in substantial depreciation in value of the lands, now used for agriculture, ranching, and fruit growing; restrictive city ordinances in effect or which could be passed would prevent the present uses of the lands and cause a substantial loss of income to relators.

Annexation would impose heavy taxes without benefit to relators; taxes would be the only benefit to the city; the lands are not needed for city purposes or for city growth; the many vacant lots and acres of unplotted land now in the city would provide homes and places of business for about double the city's present population of some 25,000; proposed annexation would make Reno a sprawling, irregularly shaped area, partly city and partly country, unable to satisfy the needs of the people.

The lands are not platted or subdivided, but are irrigated meadows, brush, orchards and gardens, partly in a canyon, separated from Reno by suburban areas, and distant some two miles from Reno's business center; the city is not injured by the present uses of the lands; county land use and land zoning permit relators to farm and ranch the land; city sidewalks and street lights would be detrimental to the lands.

Only four families live on the land; no public places are on or near the property; the county peace officers

and fire equipment are efficient and sufficient; no city police or fire protection is needed; relators pay irrigation district water taxes and ditch expenses for which Reno residents not within the district are not liable.

Reno does not own or operate water, light, power, fuel, or telephone systems, relators receive such services from private concerns; there are district schools for county and city areas; there are difficulties between county and city management and maintenance of highways half in the county and half in the city; annexation would seriously affect the sewage disposal plans because the county requires its present area to finance the project; over protest, the city recently has annexed large areas but does not annex the undesirable and heavily populated airport area which is in great need of city facilities; no planning commission has recommended annexation of relators' lands; annexation would destroy the charm of the country and suburban area, and make the community less attractive.

The attempted annexation is based upon the amended Reno charter (Stats. 1945, p. 429, c. 223, sec. 10.505), as follows:

"The city council shall have the power to extend the exterior boundaries or limits of the city so as to annex or include therein additional lands with the tenements, property, and inhabitants thereof, by the passage of an ordinance declaring said territory to be annexed; provided, that the majority of the property owners of the district proposed to be annexed first petition the city council to annex said territory; and provided further, that when the city council of the city of Reno deems it necessary to annex additional territory to said city of Reno, and the inhabitants of said territory have not petitioned for annexation, that the said city council shall pass a resolution declaring its intention to annex said territory, describing said territory to be annexed, and ordering a plat of the same to be filed in the office of the city clerk of said city, and notice to be given as to the time when the city council shall hear objections to the

annexation of said territory on the part of the free-holders residing therein, and the residents of said city; said notice to be published one week in a newspaper in said city of Reno, and to be posted in at least three public places in said district to be annexed, and to be mailed to all known freeholders in said district sought to be annexed, citing them to appear and show cause, on the date named, why said land should not be annexed to said city, and giving the reasons why the said land should be annexed to said city; and provided further, that after said hearing if a majority of the freeholders residing in said territory sought to be annexed do not protest, the said city council shall pass an ordinance declaring said property to be annexed to, and be a part of, the said city of Reno, and shall order a plat showing said territory to be recorded in the office of the county recorder of the county of Washoe, and said territory shall then be a part of the said city of Reno and subject to all taxes and laws thereof; and providing further, that in the event a majority of the freeholders in said territory sought to be annexed protest against the annexation of said territory, that it will require a five-sixth ($\frac{5}{6}$) vote of the council to pass said ordinance annexing said territory to the said city of Reno."

The annexation statute is a political declaration by the legislature. We do not pass upon its policy or wisdom. Respondents argue that we cannot construe the statute, and they insist that the city has an absolute power to annex. Relators say they have the right to attack the action of the city by a court proceeding, and that the court must construe the statute in order to determine whether the city has misapplied its annexation powers.

■■ Chief Justice Shaw, famous Massachusetts jurist, said: "It is necessary to put extreme cases to test a principle." We will apply a test: Could Reno annex all farms, ranches and mines in the county? Could it annex a narrow strip to and then include Lake Tahoe? Or could it hurdle a hundred miles and annex a gypsum

plant in northern Washoe County? The test shows respondents' position is unsound. It is well settled that a court may construe an annexation statute and determine whether it has been misapplied by a city council. An annexation which is arbitrary, unreasonable, unjust and unnecessary will be held invalid. McQuillin on Municipal Corporations, 2d ed. revised vol. 1, secs. 291, 293.

■ The courts also set aside as invalid legislative acts which directly fix arbitrary and unreasonable city boundaries, or which deprive landowners of property rights protected by the constitution. State ex rel. Davis v. Stuart, 97 Fla. 69, 120 So. 335, 64 A.L.R. 1307; State ex rel. Davis v. City of Pompano, 113 Fla. 246, 151 So. 485; Searle v. Yensen, 118 Neb. 835, 226 N.W. 464, 69 A.L.R. 257; People v. Daniels, 6 Utah 288, 22 P. 159, 5 L.R.A. 444; Morford v. Unger, 8 Iowa 82; City of Orlando v. Orlando Water & Light Co., 50 Fla. 207, 39 So. 532; City of Denver v. Coulehan, 20 Colo. 471, 39 P. 425, 27 L.R.A. 751; Langworthy v. Dubuque, 13 Iowa 86; Fulton v. City of Davenport, 17 Iowa 404; Deeds v. Sanborn, 26 Iowa 419; 37 Am.Jur. sec. 29, p. 647.

■ Of course if a direct legislative act may be set aside by a court, annexation by a city council which does not rise to the dignity of a legislative act, may be set aside. Annexation by a city is an administrative act delegated by the legislature. Like the administrative acts of the public service commission or of the highway engineer or of the water engineer, the administrative act of a city in annexation is subject to court review when it is alleged to be arbitrary, unreasonable, unjust, unnecessary, or in deprivation of property rights. The law is well stated in Stoltman v. City of Clayton, 205 Mo.App. 568, 226 S.W. 315, at page 320, as follows:

"The validity of the extension of municipal boundary lines may be inquired into by the state by an action in the nature of quo warranto or other direct proceeding. * * * And that the extension of the boundary lines of a municipal corporation does not rise to the dignity of

an original act of incorporation, see State ex rel. v. Birch, 186 Mo. 205, 220, 85 S.W. 361; Warren v. Barber Asphalt Paving Co., 115 Mo. 572, 22 S.W. 490; Parker v. Zeisler, 73 Mo.App. 537, 541. * * * such an ordinance is void if unreasonable and its unreasonableness is subject to judicial inquiry in which will be applied the same test as to other corporate legislation. * * *"

5. If there is no petition by landowners, Reno may annex "when the city council deems it necessary to annex," gives notice of hearing by publication, posting and mailing, citing freeholders to show cause why the lands should not be annexed. The notice must give the "reasons why the land should be annexed." If a majority of the freeholders protest, a five-sixth vote of the council is required. These steps show that the city does not have absolute or plenary power to annex. As has been said, annexation by the city is an administrative act. The finding that the council "deems it necessary to annex," the giving of notices, the hearing of protests, and the requirement of a five-sixth council vote, were intended by the legislature and are construed to permit only reasonable, just, and necessary annexations. Otherwise the statute, instead of listing the various steps, simply would have stated that the city could annex any lands it saw fit.

6. The complaint, the map, and other exhibits show that Reno is an irregular shaped, sprawling area, partly city, partly country. It does not include a bottle-neck, long narrow corridor used for an aqueduct and power plant, nor the platted airport area used by hundreds of people for homes and business structures and in great need of city facilities. As there appear to be in the present area of the city hundreds of vacant lots and hundreds of acres of unoccupied land, capable of providing homes and places of business for many thousand more people than now live in Reno, it is clear that Reno does not require either the lands of relators or the airport area or the aqueduct and power plant area. Reno cannot be compelled to annex the two areas last named, but its

failure to do so shows the injustice of annexing agricultural lands not used for homes or commercial purposes. The only need Reno has to annex the agricultural lands of relators is for tax revenue. But annexation for tax revenue only is arbitrary and unreasonable. McQuillin on Municipal Corporations, 2d ed. revised vol. 1, sec. 293, p. 809.

7. A city is closely built with homes, business, and industrial structures, and included parks and other recreational areas. Ancient cities were surrounded by walls. City people have community interests in housing, in business, and in professions. Farms and farmers are out of place in a city. A spurt in building activity during a period of prosperity, which all too often is short lived, does not justify hasty or illadvised annexation of agricultural lands over the protests of the owners.

8. It must not be forgotten that public policy in Nevada and in other western states encourages agriculture and mining as paramount industries. There is little manufacturing in the state. Statutes encourage agriculture by giving the right of condemnation for irrigation ditches and storage reservoirs. This public policy has been declared by many decisions of this court. It has been recognized by the supreme court of the United States. In Clark v. Kansas City, 176 U.S. 114, 20 S.Ct. 284, 286, 44 L.Ed. 392, it was held that a city annexation statute which discriminates in favor of agricultural lands by providing that such lands may not be annexed, is constitutional. The court said:

"* * * It may be the judgment of an agricultural state that they should find a limit in the lands actually used for agriculture. * * * Other uses * * * can receive all the benefits of the growth of a city, and not be moved to submit to the burdens. Besides, such uses or manufacturing uses adjacent to a city may, for its order and health, need control. Affecting it differently from what farming uses do may justify, if not require, their inclusion within the municipal jurisdiction."

37 Am.Jur. sec. 30 p. 648, also recognizes the distinction between agricultural lands and platted areas for annexation purposes.

■ In view of the public policy to encourage agriculture, we hold that the 1945 statute does not give Reno the power, over the protest of the owners, to annex, arbitrarily, unreasonably, unnecessarily, and to the financial loss of the owners, an area of agricultural land. We cannot read into the statute any implied power to annex such lands. In this respect, the owners of 40 or 50 acres receive the same consideration as if they owned ten thousand acres. McQuillin, sec. 295, p. 814 says: "* * * The reasonable view is that the power to enforce incorporation upon farming lands which are sparsley settled must be expressly given and will not be implied against private consent."

See also: People ex rel. Pletcher v. Joliet, 328 Ill. 126, 159 N.E. 206; Harvey Canal Land & Improvement Co. v. Gelbke, 166 La. 896, 118 So. 75; State v. Pompano, 113 Fla. 246, 151 So. 485; Bingle v. Richmond Heights, Mo.App., 68 S.W.2d 866; People v. Bennett, 29 Mich. 451, 18 Am.Rep. 107.

The map and other exhibits attached to the complaint show that only a small part of relators' lands is contiguous to Reno. The statute does not in words require that annexed areas be contiguous to a city. However, as showing again that the statute must be construed to have a reasonable meaning, similar statutes are construed to mean that noncontiguous lands cannot be annexed. Among the cases so holding are: Chicago & N. W. Railway Co. v. Town of Oconto, 50 Wis. 189, 6 N.W. 607, 36 AM.Rep. 840; Indianapolis v. McAvoy, 86 Ind. 587; Denver v. Coulehan, 20 Colo. 471, 39 P. 425, 27 L.R.A. 751; Morgan Park v. Chicago, 255 Ill. 190, 99 N.E. 388; Cole v. City of Watertown, 34 S.D. 69, 147 N.W. 91.

Even in States where public policy in favor of agriculture is not as strong as in Nevada, the courts construe the statutes to prevent arbitrary annexation of

agricultural lands. Thus, in State ex rel. Walker v. Gladewater, Tex.Civ. App., 139 S.W.2d 283, 286, the court held:

"To subject the properties of a people to the burden of a municipal government which will share none of its benefits is unjust, State v. Eidson, supra [76 Tex. 302, 13 S.W. 263, 7 L.R.A. 733], and would result in the imposition of unnecessary burdens and the infliction of great injuries. * * * And as stated in State v. Masterson [Tex.Civ.App.], 228 S.W. [623], 631, 'to permit the incorporation (of relators' lands) in this case to stand, as was attempted, would be for us to sanction that which is clearly a legal fraud.' Such attempted act was arbitrary, unreasonable, and violative of the inhibitions of both State and Federal Constitutions, * * * that 'a person shall not be deprived of his * * * property without due process of law.' "

A recent case is Nolting v. City of Overland, Mo.Sup., 192 S.W.2d 863. The court held that farm land not platted or offered for sale as town lots and not needed for municipal purposes, could not be annexed. The court cited a number of cases. The cases all hold that on facts very similar to the annexation attempted by Reno, annexation is denied.

In City of Pine Bluff v. Mead, 177 Ark. 809, 7 S.W.2d 988, the court denied annexation and used language which applies to the Reno situation, as follows:

"There is much vacant property in the present city limits; that much of that attempted to be taken in is unplatted and vacant."

Likewise, the language used by the Indiana court in North Judson v. Chicago & E. R. Co., 72 Ind.App. 550, 126 N.E. 323, 326, is appropriate. Annexation of farm lands was denied. The court said:

"* * * with the surplus of lots, tracts, and farm lands within the present boundaries of the town, the territory which it is proposed to annex is not necessary."

There is no need to give detailed consideration to the many other cases. We accept the rule

approved by McQuillin, sec. 291, p. 801, and stated in Vestal v. Little Rock, 54 Ark. 321, 15 S.W. 291, 11 L.R.A. 778, 15 S.W. 891, that annexation is arbitrary, unreasonable and invalid when the lands are used only for agriculture or horticulture, or are vacant and do not derive special value from adaptability to city use. Earlier in this opinion we referred to McQuillin, sec. 293, p. 809; "The limits of a city cannot be extended to take in unplatted lands merely for the purpose of increasing the city's revenue."

Upon the facts stated in the complaint, the annexation of relator's lands by the city of Reno is invalid because it is arbitrary, unjust, unreasonable, unnecessary and in violation of due process. The said statute of 1945 is not unconstitutional, but we believe respondents' application of it as to relators' land does violate due process. The demurrer therefore is overruled. Until further order, the respondents are excluded from the lands of relators described in the complaint and from having or using any rights, privileges, or corporate powers thereon.

Respondents also have filed an answer. Relators now may move for judgment on the pleadings, or move to strike, or demur or reply.

HORSEY, J., concurs.

Justice E. J. L. TABER participated in the hearing of this matter but passed away before this opinion was completed.