In the Matter of FRANCES M. MAXWELL et al., Petitioners, against FRANCIS J. KLAESS, as Deputy Superintendent of the Department of Public Works of the Incorporated Village of Rockville Centre, Nassau County, Respondent.

In the Matter of SANFORD J. DAVISON et al., Petitioners, against FRANCIS J. KLAESS, as Deputy Superintendent of the Department of Public Works of the Incorporated Village of Rockville Centre, Nassau County, Respondent.

In the Matter of DOMENICO SICILIANO, Petitioner, against FRANCIS J. KLAESS, as Deputy Superintendent of the Department of Public Works of the Incorporated Village of Rockville Centre, Nassau County, Respondent.

In the Matter of PATRICK R. E. McGUINNESS et al., Petitioners, against FRANCIS J. KLAESS, as Deputy Superintendent of the Department of Public Works of the Incorporated Village of Rockville Centre, Nassau County, Respondent.

In the Matter of E. CHARLTON L. GODDARD, Petitioner, against FRANCIS J. KLAESS, as Deputy Superintendent of the Department of Public Works of the Incorporated Village of Rockville Centre, Nassau County, Respondent.

Supreme Court, Special Term, Nassau County, June 18, 1948.

*Sanford A. Davison* for Frances M. Maxwell and others, petitioners.

*Myron D. Levy* for E. Charlton L. Goddard, petitioner.

*Edgar T. Beamish* for respondent.

FROESSEL, J.   Five owners of different parcels of real estate have brought separate proceedings against the respondent, as deputy superintendent of the department of public works of the Incorporated Village of Rockville Centre, Nassau County,

New York, to compel the approval and issuance of a building permit to enable each petitioner to alter his present one-family dwelling for use as a two-family dwelling. The respondent, in his several amended answers, aside from denials, alleges (1) that petitioners have not obtained the consent and permit of the board of appeals for such alteration as was required on the date of filing their applications, to wit, March 18, 1948, and (2) that since April 7, 1948, two-family houses are not permitted in the district within which petitioners' premises are located. Petitioners thereupon replied to the respondents' answers, setting forth a number of affirmative conclusory allegations, as well as several contentions as to why the relief demanded in the petitions should be granted.

After the matter was submitted, the attorney for the respondent asked leave to file a stipulation with respect to the steps taken in the adoption of three amendments to the Building Zone Ordinance, and the attorney for the petitioners asked leave to withdraw two petitions, one on the part of Sanford John Davison and Virginia Lockwood Davison, and the other on behalf of Patrick R. E. McGuinness and Elvira McGuinness. The stipulation is received as part of the record, and the request for the withdrawal of said two applications is granted. This leaves for disposition by this court the three remaining applications.

The undisputed facts, so far as here pertinent, are as follows: On November 26, 1941, the Building Zone Ordinance (No. 51) of the Village of Rockville Centre was adopted. Article IV thereof provided (§ I) that in *Residence A Districts* (in which classification petitioners' premises fall), " * * * no building ing * * * shall be erected or altered which is arranged, intended or designed to be used, except for one or more of the following uses:

"1. Single-family detached dwelling * * *.

" 2. Two family detached dwelling which shall have a roof other than one of the character or description known as a flat roof, provided, however, that the consent and permit of the Board of Appeals be granted for each such two family house."

On or about June 13, 1946, Sanford A. Davison and Sarah F. Davison (not the Davisons in the instant case) brought a proceeding similar to the one here instituted. The matter was referred to an official referee, and he reported that so much of subdivision 2 as purported to delegate discretionary power to the board of appeals without setting up any " standards, rules or regulations " was unconstitutional and void. The report

was confirmed by this court (*Matter of Davison* [*Cooper*], N. Y. L. J., June 7, 1947, p. 2259, col. 7, KLEINFELD, J.), and, on appeal to the Appellate Division, the order of this court was unanimously affirmed on February 24, 1948 (273 App. Div. 870). The order of the Appellate Division was filed with the Clerk of Nassau County on March 8, 1948, and is still in effect.

In the meantime, and effective as of October 1, 1947, the said ordinance was amended by adding section IX to article X, by which standards, which were lacking in the prior *Davison* case (*supra*), were supplied. The petitioners contend that these standards are not valid by reason of their generality and the broad discretion which they give to the Board of Appeals. Excepting as to the quality of reasonableness with respect to subdivision (f) of said new section IX, which requires an applicant to consent that the permit from the board of appeals to erect or alter a building for use by two families '' will be effective only for a period not exceeding two years '', I am of the opinion that said amendment sets up sufficient standards and guides to withstand the attack of unconstitutionality. Aside from the more general provisions of said section IX with respect to '' consideration of the health, safety, moral and general welfare of the community in harmony with the general purpose and intent of the ordinance '', it requires the board's determination to be made '' * * * in accordance with the comprehensive plan and design set forth in this ordinance to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and general welfare; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provisions of transportation, water, sewerage, schools, parks and other public requirements.

'' The deliberations and determinations of the said board shall be made with reasonable consideration among other things, as to the character of the district and its peculiar suitability to the particular uses, and with a view to conserve the value of building and property generally, and encouraging the most appropriate use of land throughout the municipality.''

It further provides as follows:

'' In addition to, but, not in any way limiting the application of the general standards hereinbefore specified, the Board in cases where applications are made for a permit to erect or alter a building for use by two families will give favorable consideration thereto when it is found as a fact:

" (a) that the maintenance of two family dwelling will not tend to depreciate the value of existing dwellings in the neighborhood.

" (b) that a two family dwelling will not conflict with or impede the trend of the type and character of dwellings under construction or reconstruction in a neighborhood. * * *

" (d) that the applicant has consented as a condition for the issuance of such permit to alter, repair and improve the exterior and interior of the building in accordance with the plans and specifications to be approved by the Board so that it will harmonize with the neighboring dwellings both as to appearance and utility.

" (e) that such alterations, repairs and improvements among other things will provide suitable safeguards against fire hazards, provide for the construction of but one front entrance to the building and that in the case of an alteration to an old house, it will be reasonably modernized so as to enhance its appearance."

In *Matter of Olp* v. *Town of Brighton* (173 Misc. 1079, 1082, affd. 262 App. Div. 944 [4th Dept.]), in the course of the lower court's opinion, it said: " If a legislative body vests an administrative agency with power to exercise discretion, it must mark out the limits of that discretion by the formulation of some standard to guide the board or agency. All that these cases require is that some standard shall be established. It need not be specific. A standard may be general and none the less valid if it is capable of a reasonable application. (*Trustees of Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, 191 N. Y. 123; *Matter of Kings County Lighting Co.* v. *Maltbie*, 244 App. Div. 475; *Matter of Elite Dairy Products, Inc.*, v. *Ten Eyck*, 271 N. Y. 488, 494, 495; *People ex rel. Doscher* v. *Sisson*, 222 id. 387, 397; *People ex rel. Broderick* v. *Goldfogle*, 213 App. Div. 677, 692; *Matter of Berger* v. *Quinn*, 149 Misc. 545.) "

While the court also held that no standard was required in that case for the exercise of the town board's discretion, since, as a legislative body, its power to approve or disapprove a given use was plenary, the cases cited at the end of the statement above quoted clearly support it. Our own Appellate Division cited *Matter of Olp* v. *Town of Brighton* (*supra*) with approval in *Matter of Thomas* v. *Board of Standards & Appeals* (263 App. Div. 352, 361, revd. on other than constitutional grounds 290 N. Y. 109). In *Matter of Elite Dairy Products* v. *Ten Eyck* (271 N. Y. 488, 495) our Court of Appeals said: " The legislature

may properly authorize an administrative officer to weigh the evidence in each case and determine questions of fact. Any discretion, there, left to the administrative officer is confined to a designated field, and within that field rests, not upon unfettered choice, but upon the application of rules of reason to facts proven or found." (See, also, *People ex rel. Sheldon* v. *Board of Appeals,* 234 N. Y. 484; *Matter of Reed* v. *Board of Standards & Appeals,* 255 N. Y. 126, 135; *Hilton* v. *Board of Appeals of City of Geneva,* 18 N. Y. S. 2d 213, 217.)

In the case at bar, the village board of trustees did not entrust the board of appeals with a discretion unconfined; on the contrary, it conferred authority and discretion to be exercised under and in pursuance of the law, and according to the standards and guides supplied by section IX of article X. To this there can be no valid objection. If, indeed, in any case the discretion is arbitrarily or unreasonably exercised, the board's action is subject to challenge and review by the courts.

On March 18, 1948, after the amendment supplying standards had been in effect for five and a half months, and after the affirmance by the Appellate Division during the preceding month, petitioners filed their applications for permits. As the ordinance read on that date, the consent of the board of appeals was necessary. Indeed, two of the petitioners, Siciliano and Goddard, had applied to the board for consent prior to filing their applications, but such consent was denied, from which denial no appeal was taken. Under all the circumstances, the respondent was justified in refusing to issue the permit. He took such action on March 23, 1948, stating: " No consent or permit for use of the building as a two-family dwelling has been obtained from the Board of Appeals, as required by Ordinance 51, Article IV, Section 1, subdivision 2."

The record before me also discloses that on March 4, 1948, shortly after the affirmance by the Appellate Division in the former *Davison* case (*supra*) a notice was published to consider the amendment of said subdivision 2 by substituting " Board of Trustees " in place of " Board of Appeals." On March 19, 1948, one day following the filing of petitioners' applications for permits, the said amendment was adopted. On March 23, 1948, the very day on which the respondent denied the petitioners' applications for permits, this amendment, as adopted, was published, and it became effective on April 3, 1948, after which date the consent of the board of trustees was necessary. No such consent was obtained by these petitioners.

It is rather singular that on the same day the said amendment was published, namely, on March 23, 1948, another notice was. published to consider a further and second amendment at a meeting to be held on April 7th " * * * for the purpose of considering the repeal of subsection 2 of Section 1, of Article IV of the Building Zone Ordinance No. 51 of the Village of Rockville Centre."

Inasmuch as the first amendment had not yet become effective, this notice must be deemed to refer to the repeal of said subdivision 2 as it read before the effective date of said amendment. This result is substantiated by the fact that after the second amendment was adopted, the published notice of the resolution passed by the trustees in connection therewith read as follows: " does hereby amend Building Zone Ordinance No. 51 by repealing subsection 2, Section 1 of Article IV of said Ordinance, which reads as follows: ' Two-family detached dwelling, which shall have a roof other than one of the character or description known as a flat roof, provided, however, that the consent and permit of the Board of *Appeals* be granted for each such two-family house.' " (Italics mine.)

It follows from the foregoing that the second amendment left untouched the first amendment, and that the consent of the board of trustees is still required under the existing provisions of subdivision 2. Hence, the so-called " second separate answer to the petition ", contained in paragraphs 7 and 8 of respondent's answers cannot be sustained. It also .follows therefrom that petitioners' claims in their several replies " that the repeal of said subdivision 2 destroyed the general plan and scheme of said ordinance " is without merit.

The further claim of vested rights allegedly accruing to petitioners before a permit was even issued is also without force, and is not supported by a single statement of fact in any of the papers submitted by them. It is difficult to see how they could have any vested rights in advance of the issuance of the permits. Indeed, even had petitioners obtained permits without more, a subsequent change in the zoning regulations would bar them from the relief sought. (*Matter of Fairchild Sons, Inc.,* v. *Rogers,* 246 App. Div. 555; *Matter of Fox Lane Corporation* v. *Mann,* 216 App. Div. 813, affd. 243 N. Y. 550; *Matter of Tralow Realty Corp.* v. *Murdock,* 261 App. Div. 173; *Matter of Cherry* v. *Isbister,* 201 App. Div. 856, affd. 234 N. Y. 607.)

Petitioners finally claim that there was collusion between the respondent and other village officials for the purpose of defeat-

ing petitioners in securing their permits, and in this connection they rely on *Matter of Dubow* v. *Ross* (254 App. Div. 706; 175 Misc. 219). Certainly that case has no application here. The amendment supplying the standards that were previously lacking was adopted over five and one-half months *prior* to the time that these petitioners filed their applications for permits. The notice to consider the amendment of subdivision 2, by substituting " Board of Trustees " for " Board of Appeals ", was published on March 4th — fully two weeks before said applications were filed — and said amendment was adopted on the *day following* the filing of said applications. The applications were acted upon expeditiously and within five days after they were filed. Under these circumstances, it cannot be said that the respondent, charged with the duty of issuing permits, willfully withheld and refused to issue them to petitioners for improper reasons, by virtue of which they were prevented from acquiring a status that would have given them vested rights. The claim of bad faith and improper motives has no legal merit. (*Matter of Peck,* 231 App. Div. 99, affd. 256 N. Y. 669; *Kittinger* v. *Buffalo Traction Co.,* 160 N. Y. 377, 388, 392; *McCabe* v. *City of New York,* 213 N. Y. 468, 483–485.)

In the light of the foregoing views, and since no triable issues of fact are raised (Civ. Prac. Act, § 1295), I have no alternative but to dismiss the proceedings, without prejudice, however, to the right of petitioners to apply to the board of trustees, where I am sure that their several situations will be given every proper consideration.

Settle orders on notice.